Filed 2/26/21  In re A.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | |
| KINGS COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.S., <br><br> Defendant and Appellant. | F081856 <br><br> (Super. Ct. No. 19JD0120) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kings County.  Jennifer Lee Giuliani, Judge.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Lee Burdick, County Counsel, and Risé A. Donlon, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Franson, Acting P.J., Peña, J. and De Santos, J.

T.S. (mother) appeals the juvenile court's order terminating her parental rights as to her now almost two-year-old son, A.S. (Welf. & Inst. Code, § 366.26).[1] Mother contends the Kings County Human Services Agency (agency) failed to comply with inquiry provisions of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) The agency concedes there were inadvertent omissions in ICWA inquiry and notice that it intends to remedy and does not oppose remand for the limited purpose of ensuring proper compliance with ICWA. We agree with the parties and conditionally reverse the juvenile court's order terminating parental rights and remand for proceedings to ensure ICWA compliance.

### FACTS AND PROCEDURAL HISTORY

Because the sole issue on appeal concerns compliance with ICWA, we only briefly discuss the underlying circumstances of the dependency proceedings.

A.S. was born in June 2019. At the time of his birth, he and mother tested positive for methamphetamine and amphetamine. On June 27, 2019, the agency filed a dependency petition alleging newborn A.S. came within the juvenile court's jurisdiction under section 300, subdivision (b)(1) because he had suffered or was at a substantial risk of suffering serious physical harm or illness due to mother's inability to protect him due to her substance abuse. Mother claimed no Native American ancestry.

At the arraignment hearing on July 11, 2019, the juvenile court found a prima facie showing had been made that A.S. was described by section 300 but that continued placement in mother's home was not contrary to his welfare. The court also made a finding that ICWA did not apply. W.W. (father) was named as an alleged father at the hearing and was subsequently located during a due diligence search. On or about July 15, 2019, father executed a "Parental Notification of Indian Status" (unnecessary capitalization omitted) form (ICWA-020) indicating he had no Native American ancestry.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

On August 19, 2019, the juvenile court found the allegations in the petition true and ordered that A.S. remain in mother's care and mother be provided with family maintenance services.

On October 17, 2019, the agency filed a supplemental petition pursuant to section 387 alleging mother failed to provide adequate supervision of A.S., which led to him being " 'kidnapped' " by father. Mother and father had been at a friend's house. Father reported everyone was drinking and using meth and that he saw mother use a syringe. According to father, mother went outside to socialize and left A.S. with him inside the house, stating she was tired of being a mother and it was his turn to take care of A.S., so he took A.S. to his cousin's house. Father reported he could not get a hold of mother and that she was high on meth and alcohol. Mother denied she or anyone else present was using drugs. Mother filed a kidnapping report, and father was arrested. A.S. was taken into protective custody and placed in a Resource Family Approval (RFA) home.

The detention hearing on the section 387 petition was held on October 21, 2019. Father appeared and claimed he had Native American ancestry. Father stated he was not a member of a tribe, but his great uncle, Willard J., was. Father did not know to which tribe Willard was a member. Father indicated Willard was alive and lived in Corcoran, California. Father also indicated Willard's sister, father's great aunt, Opal S., was alive and lived in Corcoran, California, and she might have information about father's Native American ancestry. Father did not have Willard or Opal's contact information. Father reported his parents were deceased, and other than Willard and Opal, father was not aware of anyone else who would have information regarding his Native American ancestry.

The court ordered A.S. detained from mother. Father requested, and the court ordered, genetic testing.

On October 21, 2019, father executed a new ICWA-020 form indicating he may have Native American ancestry but that he did not know what tribe or tribes.

At the combined jurisdiction/disposition hearing on November 12, 2019, the juvenile court sustained the section 387 petition and ordered A.S. removed from mother's physical custody. The court ordered that mother be provided with reunification services.

On December 9, 2019, the agency filed a paternity review report indicating there was a 99.9 percent probability that father was A.S.'s biological father and recommended he receive family reunification services. As to ICWA, the report indicated that father had disclosed at the detention hearing that Willard was an enrolled member of a tribe and that Opal could provide more information. The report stated: "The undersigned met with [father] on 11/06/2019, and he did not provide contact information for [] Opal S[.] at that time."

At a paternity review hearing on December 11, 2019, the juvenile court found father was A.S.'s biological father and ordered he be provided with family reunification services.

Both parents engaged in some services but repeatedly tested positive for methamphetamine and amphetamine. At a six-month review hearing on June 17, 2020, both parents' family reunification services were terminated, and the juvenile court set a section 366. 26 hearing.

The agency's section 366.26 report indicated that a social worker had "conducted further ICWA inquiry" when he met with father on November 6, 2019, but that father "did not provide any contact information for [] Opal S[.] or any other information." The report then stated: "No additional information has been provided to suggest the minor[] [is] or may be Native American as defined by [ICWA] since the issuance of the Court's findings on 07/06/2020.[2] Therefore, pursuant to [s]ection 224.3, a new inquiry is not

_____

**2** No ICWA findings were made on this date. The most recent ICWA findings made by the court were on July 11, 2019, before father made his claim of Native American ancestry.

necessary. Based on the information provided by the biological parents, there is no evidence to suggest that the minor[] may be subject to [ICWA]." The report recommended termination of parental rights and the court select a permanent plan of adoption.

On October 7, 2020, the date set for the section 366.26 hearing, the parents requested a contested hearing. The agency informed the court they had no additional information regarding ICWA and asked the parents in open court whether they had "any new information regarding Native ancestry." Both parents indicated they did not.

At the contested section 366.26 hearing on October 13, 2020, the parents were not present and their counsel withdrew their requests for contest. The juvenile court found by clear and convincing evidence A.S. was adoptable and ordered a permanent plan of adoption and terminated parental rights. The court signed a written finding that ICWA inquiry had been completed and that ICWA did not apply in the matter.

## DISCUSSION

Mother asserts the juvenile court erred by finding ICWA did not apply because the agency failed to comply with ICWA inquiry provisions. Specifically, mother argues the agency was required under ICWA to make a good faith effort to locate and interview any relatives who may have pertinent information about A.S.'s Native American ancestry and contact the Bureau of Indian Affairs (BIA) and Secretary of the Interior for assistance. The agency concedes error and does not oppose remand. We accept the agency's concession.

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child," the Indian custodian and the Indian child's tribe have

the right to intervene (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). For purposes of ICWA, an "Indian child" is an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].) The court and county child welfare agency "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 9; Cal. Rules of Court, rule 5.481(a).)

The agency's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) The juvenile court must ask the participants in a dependency proceeding upon each party's first appearance "whether the participant knows or has reason to know[3] that the child is an Indian child" (§ 224.2, subd. (c)), and "[o]rder the parent … to complete [an ICWA-020 form]" (Cal. Rules of Court, rule 5.481(a)(2)(C)).

---

**3** There is "reason to know" a child is an Indian child if "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [¶] [and/or] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian Tribe." (§ 224.2, subd. (d); see 25 C.F.R. § 23.107(c) (2020).)

After initial inquiry is conducted, when the court or social worker has "reason to believe"[4] (but not sufficient evidence to determine there is "reason to know") that an Indian child is involved in a proceeding, section 224.2, subdivision (e) requires "further inquiry regarding the possible Indian status of the child."  (§ 224.2, subd. (e).)  "[F]urther inquiry" includes:  (1) interviewing the parents and extended family members to gather available familial and tribal enrollment information; (2) contacting the Bureau of Indian Affairs and State Department of Social Services for assistance with identifying tribes in which the child may be a member of or eligible for membership; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.  (§ 224.2, subd. (e)(2); 224.3, subd. (a)(5).)  The agency "has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status."  (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.)

If, after further inquiry is conducted, "the court, a social worker, or probation officer knows or has reason to know … that an Indian child is involved" in the dependency proceeding, notice shall be sent to the child's parents or legal guardian, Indian custodian, if any, and the child's tribe for any hearing that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement so the tribe may exercise its right to intervene.  (§ 224.3, subd. (a); see 25 U.S.C. § 1912(a).)

We review the juvenile court's finding that ICWA is inapplicable for substantial evidence.  (*In re Rebecca R*. (2006) 143 Cal.App.4th 1426, 1430.)  We apply the ICWA

---

**4**     "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.  Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)."  (§ 224.2, subd. (e)(1).)

statutes that applied at the time of the finding from which mother appeals. (*In re A.M.* (2020) 47 Cal.App.5th 303, 321.)

Here, the juvenile court's finding on October 13, 2020, that ICWA was inapplicable was not supported by substantial evidence because the agency did not conduct adequate inquiry. Father's indication he may have Native American ancestry and identifying a lineal family member who was a member of a tribe was sufficient to give the agency and the court "reason to believe" A.S. was an Indian child, triggering the duty of further inquiry. The agency should have made a meaningful effort to locate, at the very least, Willard and Opal and attempt to gather the necessary information which would have assisted them in determining whether they had reason to know A.S. was an Indian child and whether notice to any tribes was necessary. (§ 224.2, subd. (e)(2)(A).) The agency should have also contacted the Bureau of Indian Affairs or State Department of Social Services for help in identifying whether A.S. had a connection to a particular tribe. (§ 224.2, subd. (e)(2)(B).) Depending on the results of the agency's investigation, they may have needed to contact and provide information to particular tribes to gather more information as to A.S.'s status as an Indian child. (§ 224.2, subd. (e)(2)(C).) The record is silent as to any efforts the agency made to try to locate father's relatives or take any further steps to determine whether there existed a reason to know A.S. was an Indian child.

For these reasons, we accept the agency's concession and remand for the juvenile court to ensure compliance with ICWA inquiry requirements.

## DISPOSITION

The juvenile court's October 13, 2020 order terminating mother and father's parental rights is conditionally reversed. The matter is remanded to the juvenile court for the agency to conduct adequate inquiry required by sections 224.2 and 224.3, and for any further proceedings resulting therefrom. If, after the court finds adequate inquiry has been made, the court finds the child is an Indian child, the court shall vacate its existing

order and proceed in compliance with ICWA and related California law.  If the court finds the child is not an Indian child, the section 366.26 order shall remain in effect.